NATHAN B. METCALF, APPELLANT, v. NANCY J. METCALF, APPELLEE.

FILED JANUARY 5, 1905.   No. 13,686.

1. Alimony.  In awarding alimony the court should consider the condition, situation and standing of the parties, financially and otherwise, the duration of their marriage, the amount and value of the husband's estate, the source from which it came and how far, if at all, the wife contributed thereto.

2. Evidence examined by this criterion, and *held* that the amount of alimony awarded is not excessive.

APPEAL to the district court for Webster county: ED L. ADAMS, JUDGE.  *Affirmed.*

*A. D. Ranney* and *Tibbets Bros. & Morey,* for appellant.

*John C. Stevens, contra.*

LETTON, C.

This is an action for divorce brought by Nathan B. Metcalf against Nancy J. Metcalf in the district court for Webster county. A cross-petition was filed, praying for a divorce on the ground of cruelty. A divorce was granted the husband on account of desertion, but an allowance of $500 was made to the wife as alimony. Appellant contends that the alimony allowed was excessive. The parties were married in 1877, in Iowa, and resided there until the spring of 1893, when they moved to Nebraska. When they were married they had very little property. The amount contributed by each to the common fund is somewhat in dispute, but the evidence shows that the husband had saved from $400 to $750, and that the wife had two cows, two pigs, feather beds, poultry and household furniture. No children were born to them. The plaintiff at his marriage invested all his money in a farm in Iowa, and, as the result of their joint labor and of the fortunate results of his investments in Iowa land, at the time he left Iowa he sold his property there and realized somewhere from $7,500 to $10,000 in money, the testimony being conflicting as to the exact amount. He paid $6,500 for a farm in Webster county, Nebraska, to which the family moved, and he testifies he had about $500 left, while the wife testifies that they had figured it up before leaving Iowa, and had $10,000 to bring to Nebraska. When they moved to Nebraska the wife's mother and sister came to live with them, and during the summer of 1893 dissensions occurred by reason of their presence in the home. In November, 1893, the plaintiff accused his mother-in-law of taking $200 in money which he claims he had brought to the house from the bank the day before. This she denied. He claims she struck him during the controversy, while this is contradicted by his wife who was present at the time. At all events, the plaintiff became so dissatisfied with her presence in the home that he procured a notice to quit to be served upon

her.  She then left, but her daughter, defendant herein, insisted upon leaving if she did, and left with her.  From that time the parties have lived apart.  At the time of this separation a written contract was entered into between them, whereby they agreed to make a division of property, "particularly the real estate," in which contract the plaintiff agreed to pay his wife $1,500, and she agreed to make him a deed conveying her interest in the land. Plaintiff failing to pay the amount agreed upon by the contract, an action was brought against him to recover the amount, whereupon he sought to reform the same so as to show that the sum of money specified should be in full of all claims or demands on his property and for full release of all defendant's dower rights.  By the decree the court found the contract to be as alleged by the wife; that it ought not to be reformed, and that the contract had no reference to any other property but the real estate described; and required the wife to deposit a deed of her interest in the property with the clerk of the court for the plaintiff, and thereupon execution should issue for the amount due under the contract.  This judgment was satisfied; but, if a deed was ever deposited, it was lost or mislaid so that the plaintiff's title to the real estate was apparently clouded or burdened by the dower right of the defendant.  This action for divorce was begun in 1902.  At the trial the court found for the plaintiff, but awarded the wife $500 alimony, in addition to the $1,500 which had been paid to her under the contract.  Plaintiff's contention is that this $500 additional alimony is excessive and unjust, and he seeks to have that portion of the decree reversed or modified.

At the time of the trial it appeared that the farm in Webster county had depreciated in value from the time of its purchase; that a large barn upon the farm had been burned; that the house had been poorly taken care of and needed repair, and that the forest and fruit trees had been neglected and destroyed; that the farm would not sell for more than $5,000, and that there was a mort-

9

gage upon the same for $700. It was also shown that the plaintiff had virtually no other property. It further appeared that between the time that his wife left him and the time of the trial he had purchased a gambling room in Hastings and had lost $600 which he invested therein. The evidence further shows that, during the time that the parties lived in Iowa together, the wife had faithfully performed that portion of the work upon a farm which usually falls to the lot of the wife; that she worked hard herself so as to avoid the necessity of hiring help, and had aided in the accumulation of the property. There seems to have been no difference or dispute between them until they made the unfortunate move to Nebraska. It appears also that the defendant is weak and sickly, and is unable to earn her living as a result of her trouble and hard work.

As to awarding of alimony the rule is that the court should consider the condition, situation and standing of the parties, financially and otherwise, the duration of their marriage, the amount and value of the husband's estate, the source from which it came and how far, if at all, the wife contributed thereto. Taking the testimony as to the value of the entire estate, it appears that at the time of the trial the value of the husband's net interest in the farm was $4,000 or $4,300; that $1,500 had been paid to the wife previously, making a total of at least $5,500 to $5,700 which the parties would have had at that time if no division had been previously made. Of this sum the district court awarded the wife $2,000, leaving the husband from $3,500 to $3,700 in value. This takes no account of the additional property which seems to have been squandered by the husband during the separation. If we consider the result of the partnership labors as of the time that the separation was had in 1893, according to the plaintiff's own testimony he was worth then over $7,000. Under the circumstances in this case, where the property was almost entirely the result of the joint labor, care and investments of both parties continued over a

period of 16 years before the separation, and considering the condition and situation of both parties, we do not think this allowance was inequitable or unjust. The district court had all the parties before it, and, while the testimony in the case is largely devoted to the issues as to the right to a divorce, still that court was better fitted to weigh the value of the evidence as to the property and situation of the parties than a reviewing court is. This is a trial *de novo,* but we cannot refrain in such a case as this in giving some regard to the conclusions of the district court.

It is contended that the contract by which the plaintiff paid the defendant $1,500 was to be a full and complete adjustment of their property interests, and that the court should not increase the amount that the parties agreed upon. That question was submitted to a court in an action where the plaintiff sought to have the contract reformed to that end, and the court specially found against him upon that issue. That decision is final between the parties. The position taken, therefore, cannot be maintained in this action, whatever might be the views of this court as to the true intention of the contract.

For these reasons, we recommend that the judgment of the district court be affirmed.

Ames and Oldham, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

Affirmed.