LUCY J. MILLER, APPELLANT, V. JACOB MILLER, APPELLEE.

FILED MAY 29, 1912.    No. 16,719.

1. **Divorce: ALIMONY.** In an action for divorce and alimony, the trial court should consider all of the facts in evidence as to the property rights of the parties, the sources from and the manner in which their property was accumulated, and may exercise reasonable discretion in dividing the property between them.

2. **Appeal: TRIAL DE NOVO: ALIMONY.** When a party appeals from that part of a decree relating to the division of property only, this court will try that issue *de novo* upon the record, and if the decree of the district court is found to be in substantial accord with justice and equity it will be affirmed.

APPEAL from the district court for Lincoln county: HANSON M. GRIMES, JUDGE. *Affirmed.*

*Hoagland & Hoagland,* for appellant.

*Wilcox & Halligan, contra.*

BARNES, J.

This action was brought in the district court for Lincoln county for a divorce and alimony. The plaintiff had the judgment; but, being dissatisfied with the amount of the property awarded to her as alimony, has prosecuted this appeal.

Neither party assails that part of the decree granting plaintiff a divorce, but it is contended by her counsel that the decree, so far as it relates to the question of alimony, is unjust and inequitable; that it does not properly take into consideration the amount of money contributed by plaintiff to or paid by her for the purchase of a part of the common property, and this is the only question presented for our determination.

A trial *de novo* on the record brought here upon the appeal discloses that plaintiff and defendant were married in Cass county on the 14th day of February, 1884;

that on or about the 1st day of April of that year they moved to and settled upon the north half of section 11, township 16, range 27 west, in Lincoln county, Nebraska, they having previously entered that tract of land.  In due time they made their final proofs and received a patent therefor under the laws of the United States. They continued to live upon the tract of land above described, and cultivated and improved it to some extent until about the 1st day of January, 1894, when the defendant was elected sheriff of Lincoln county, and they thereupon moved to North Platte, and the defendant held and filled the office of sheriff for a period of four years.  Shortly after the expiration of his term of office they moved back to the homestead.  For a period of nearly three years after leaving the sheriff's office the defendant was employed by the Union Pacific Railroad Company, and for a portion of that time was deputy United States marshal in the state of Wyoming.  Before he was elected sheriff, and while residing upon the homestead, defendant supported his family by working at his trade as a blacksmith.  During the period of his employment by the Union Pacific Railroad Company and as deputy United States marshal, defendant received a salary of from $60 to $75, and finally $100 a month. During a part of this time the plaintiff remained upon the homestead, and a part of the time lived in Cheyenne, Wyoming, with the defendant.  Finally, in the year 1903, the parties returned to the homestead and occupied it as such until the commencement of this action, when they differed upon matters relating to religion, and the defendant left their home and has since resided with a relative in Lincoln county. The plaintiff continued to live upon the homestead, and still makes it her home.  When the parties first moved to the homestead the plaintiff had a stove, some cooking utensils, some bedding and dishes, and six cows.  The defendant had one span of ponies, one wagon, his blacksmith tools, three cows, one heifer, some notes and school orders, and some money amounting to about $400.  The defendant, with his

earnings as a blacksmith, as sheriff of Lincoln county, as a detective for the Union Pacific Railroad Company, and deputy United States marshal of Wyoming, kept the family, improved the homestead, and with a portion of his earnings purchased other lands, then of little value, and which he owned at the time of their separation, amounting to 1,000 acres, situated in Lincoln county. Three children were born to the parties, and two of them were minors at the time this action was commenced. At the time of the marriage the plaintiff had a minor son named Frank Brazelton, the issue of a former marriage, who was raised and educated in the defendant's family. About the year 1899 the defendant built a good substantial frame dwelling upon the homestead, and later on built a store building, barn and other outbuildings upon the premises. It further appears that in August, 1905, the defendant had become indebted by reason of making the improvements upon the homestead and for living expenses to an amount of about $3,000. To develop a deposit of tripoli situated upon a part of his land, the defendant also borrowed $2,000 from one R. C. Peters, to be repaid in five years, and to secure the payment thereof the plaintiff and defendant executed and delivered to Peters a mortgage covering the homestead, and all other lands owned by the defendant, except a 200-acre tract in section 15, township 16, range 27; and, in order to pay such indebtedness, the defendant desired to sell the homestead. It further appears that the plaintiff had inherited 80 acres of land from her father, which was situated in Cass county; that she thought it was better to sell her Cass county land and use the money for the purpose of paying their debts, and thus retain the homestead. To this the defendant consented, and plaintiff thereupon sold her land in Cass county for $5,000, and turned the money over to the defendant. It is contended on her part that with this $5,000 she purchased the homestead, while defendant contends that she gave him the money to pay the debts, and desired him to secure the repayment of it by

deeding the homestead to her, which was accordingly done, and at the time this action was commenced the plaintiff had the title to the 320-acre homestead.

The decree, from which appeal is prosecuted, gives the plaintiff the homestead, consisting of 320 acres of land. with all of the buildings and improvements, valued at the lowest figure at $10,000, and personal property and money worth at least $1,312, while the defendant is given 1,000 acres of unimproved land, valued at $6,800, and personal property amounting to $1,187, making a total of $7,987, out of which he is required to pay the Peters mortgage of $2,000, and the costs of this case. The decree also provides that, if necessary, defendant's part of the real estate shall be sold for that purpose. It thus appears that plaintiff's share of the property amounts to $11,312, while defendant is given only $7,987 worth of property, consisting of unimproved land and some personal property; that when he pays the costs of this litigation and the Peters mortgage there will remain to him only a tract of unimproved land, worth about $5,000. Counsel for the plaintiff insists that the fact that she purchased the homestead, as she claims, with the $5,000 which she received for her Cass county land, entitles her to a greater share of the property than she is given by the decree. It appears from the record, however, that the defendant used the $5,000 to pay all of their debts except the Peters mortgage of $2,000, and turned the balance over to the plaintiff, which was used to complete the improvements on the homestead, to aid the plaintiff's son, by her former husband, in business ventures to the amount of $400 to $500, and for the living expenses of the family. It would therefore seem that in equity and good conscience the homestead, with its increased value, sufficiently compensates her for the money she contributed for their common good.

We are therefore of opinion that the decree of the district court was just and equitable, and it is in all things affirmed. We are also of opinion that the record presents

a litigable question, and for that reason each party will be required to pay the costs which he has incurred in this court.

AFFIRMED.

REESE, C. J., dissents.