JUSTENA METSCHKE, APPELLANT, v. AUGUST METSCHKE, APPELLEE.

20 N. W. 2d 238

FILED OCTOBER 19, 1945. No. 31962.

*William H. Lamme,* for appellant.

*E. L. Mahlin,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

PAINE, J.

This is an appeal by the plaintiff from a decree of divorce granted to her. The trial court found that the value of the property belonging to the parties was over $25,000, and awarded her alimony of $8,000, payable semiannually at the rate of $300, and interest at 3 per cent on the balance. The plaintiff was allowed attorney's fees of $350.

The assignments of error charge that the decree is contrary to the evidence and to the law. There is no question whatever that the plaintiff was entitled to the absolute decree of divorce which she received. The appeal is on the ground of the insufficiency of the award of alimony to the wife, as well as to its being doled out in many small payments over a long period of time.

The parties were married in 1904, the issue of the marriage being three children. The daughter became a school-teacher, and died in 1929. One son, Walter, left home about 12 years ago to attend universities at Lincoln, Nebraska, and Ames, Iowa, and is married and self-supporting. The second son, Alfred, lived at home for two years after he was married, and then began farming on land which his parents deeded to him, subject to a $4,000 outstanding mortgage which he assumed.

An examination of the award of alimony discloses that, if the defendant pays it out regularly in the semiannual payments of $300, it will require more than 13 years to complete these payments. The plaintiff at the time of trial was 58 years of age and had an expectancy of 14 or 15 years, while the defendant, being 66 years of age, had an expectancy of between 10 and 11 years; in other words, if he does not live out his expectancy he will not have completed the alimony payments. This might interfere with the sale of the property, and is unsatisfactory in this case for a number of reasons.

The trial court went out and examined the land and the personal property and decided that the livestock, machinery and grain was of the value of $2,504, and found that there was cash or credit on hand or in bank in the amount of $850.23, making the total value of the personal property $3,354.23. The court estimated the value of the 200 acres of land at $27,000, which gave the total assets of the parties at the time of trial a value of $30,354.23. There was a note due to the Farmers State Bank of Dodge of $1,995, and a mortgage on the real estate of $2,700, making total debts of $4,695, and leaving the net worth of the parties at $25,-659.23. This was in addition to a 1940 Ford car, six head of cattle, and household goods owned by plaintiff.

We believe that it is unnecessary to trace in this opinion the marital difficulties and the financial ups and downs of these frugal, hard-working people. The plaintiff undoubtedly did her full share of work in the field and in the home. The defendant was doubtless a hard-working man, and if it

had not been for the many drouth years, when the crops failed, they would have much more to show for their industry and frugality. It is claimed on the part of the plaintiff that, while she had a prolonged sickness and there were crop failures, he squandered and lost in speculations $6,000 to $8,000, but since that time he has settled down and no complaint of that kind is made against his conduct of late.

When the parties were married in 1904 they began farming land which the defendant's father provided them, and they paid the taxes only, and no rent, and later it was given to the defendant, and thereafter several thousand dollars was received by the defendant from his father and $2,000 from his father's estate. On the other hand, by the unfortunate investments made by the plaintiff's brothers she received nothing from the estates of her parents. Under such a state of facts it becomes most difficult to determine exactly how much of the assets were accumulated by their joint efforts.

In some divorce cases the relative earning capacities of the parties is a legitimate subject of inquiry, but in the case at bar, where the parties have always lived on a farm and each have done their full part in raising and selling crops, cattle, hogs, poultry, milk and other products, all of such income is clearly the result of their joint efforts.

In considering whether this court may give a portion of the real estate of these elderly people to the wife, we realize that in the opinion on rehearing in *Cizek v. Cizek*, 69 Neb. 800, 99 N. W. 28, it was said that "the district court has not jurisdiction to award real estate of the husband to the wife in fee as alimony, * * * ." However, since this opinion was adopted in 1904, our statute in 1907, as found in section 42-321, R. S. 1943, made it legal to make such an award in express terms. Since that time an award to the wife of land of the husband has been approved in *Bigelow v. Bigelow*, 131 Neb. 201, 267 N. W. 409, in which case many citations are given.

In the case of *Bartunek v. Bartunek*, 109 Neb. 437, 191 N. W. 671, this court charged specific debts of the husband

against real estate of the wife. And in *Johnsen v. Johnsen,* 144 Neb. 208, 12 N. W. 2d 837, this court said: " 'Upon the granting of an absolute divorce, the trial court may assign the property, both real and personal, acquired during the marriage by the joint efforts of the parties, between them as the demands of equity may require.' Rules of guidance for justly and equitably fixing the amount of alimony to be awarded have been established in *Felton v. Felton, supra; Phillips v. Phillips,* 135 Neb. 313, 281 N. W. 22; and *Hild v. Hild,* 135 Neb. 896, 284 N. W. 730."

In considering small payments of alimony extending over many years, there are cases in which this may be a proper solution for the payment of alimony, but "Generally, we do not approve of allowing alimony in the form of an annuity, or requiring the husband to pay a fixed sum each month during the life of the other party, or for an indefinite period of time." *Dunlap v. Dunlap,* 145 Neb. 735, 18 N. W. 2d 51. See, also, *Martin v. Martin,* 145 Neb. 655, 17 N. W. 2d 625.

In the case at bar, we believe that the decree providing for a definite amount of alimony, but in payments continuing long past the natural expectancy of life of the one who is to provide such payments, is not to be approved, considering the ages of the parties and many other facts involved in this case.

We find that the 80 acres lying in the west half of the northwest quarter of section 26 should be awarded to the plaintiff. All of the defendant's witnesses placed the value of this 80 acres at $6,800 or less, while the plaintiff's witnesses placed its value at over $8,000. We are inclined to fix the value of this 80 acres at $7,200, which is the value placed on it by the defendant himself. In addition to this land, we award to plaintiff the sum of $2,000, payable at the rate of $500 a year, with 4 per cent interest on the unpaid portion, such sum to be a lien on the 120 acres of well improved land given by the decree to the defendant, and with this modification the decree is in all other respects affirmed. An allowance of $350 to plaintiff's attorney for his services in this court shall be taxed as part of the costs.

AFFIRMED AS MODIFIED.

The following opinion on motion for rehearing was filed November 23, 1945: *Former opinion modified and motion for rehearing denied.*

PAINE, J.

The original opinion in this case will be found, *ante* p. 461, 20 N. W. 2d 238, and to that opinion this is supplemental.

There is complaint in the motion and brief for rehearing that the award of alimony is indefinite and uncertain.

The original decree in the lower court gave the plaintiff $8,000, payable in $300 semiannual payments. That award was set aside by this court, and in place thereof the plaintiff was awarded the 80-acre tract of land described in the pleadings and lying in the west half (W½) of the northwest quarter (NW¼) of section 26, and the sum of $2,000, payable at the rate of $500 a year. The first payment of $500 shall be due and payable when judgment is entered on our mandate, and the others annually thereafter on the same date. All of said amounts are to draw interest at four per cent annually from the date of the entry of the original decree of divorce by the lower court until the same are paid, and are to be a lien on the 120-acre tract given to the defendant. We also allowed a fee of $350 to plaintiff's attorney for his services in this court, to be taxed as part of the costs.

The award of specific items of personal property, including the sum of $144.80 awarded plaintiff, as made by the trial court, together with all other provisions of the decree of the lower court not specifically modified, is affirmed. The motion for a rehearing is hereby denied.

AFFIRMED AS MODIFIED.